15-1771 and 15-1818 Goat Island South Condominium et al. versus IDC Clambakes. Okay, we don't need a break. Thank you. Good morning, Your Honor. Matthew McGowan for the bankruptcy debtor, IDC Clambakes. I'd like to reserve two minutes for rebuttal. You may have it. This matter came before this court in 2013. The court at that point ruled that the trespass claims of the condominium associations had been appropriately disallowed by both the bankruptcy court and the district courts below. They had been disallowed in their entirety. The reason for the disallowance was because those courts had found that there was consent in regard to the trespass in the Rhode Island Supreme Court. This is a state law issue. The Rhode Island Supreme Court said that consent destroys trespass. In arguing the equities here, I would ask that the court bear that important point in mind that every court that has looked at this issue has said that there was consent and because there was consent, they found, therefore, that there could not be any trespass. A second important point that is likewise ignored by the associations is that, as Judge Hoffman, the bankruptcy judge who was handling this matter, by designation from this court in Rhode Island ruled, generally, if you are complaining about trespass, the remedy you will seek is injunctive to remove the offending property that is trespassing. Here, it was just the opposite. Judge Hoffman noted that Mr. Bruce, who is the principal of the IDC entities, said that he was willing to remove the offending allegedly trespassing property, that being the Regatta Club. He even requested permission to remove it. Permission to remove that was denied. So, as Judge Hoffman noted, this is a situation where the associations made a conscious business decision to reap the benefits that were flowing from that Regatta Club. And they did so in continuing to receive very handsome benefits. Now, ultimately, the matter was renamed by this court because the associations insisted, when they were here last time, that if there was consent, well then, with consent, they said, quote, every theory of implied consent gives rise to a corresponding implied obligation to pay for the value of what was received. And they referred to three Rhode Island Supreme Court cases that they told this court, insisted before this court, stand for that proposition. The court, on page 71 of its decision, says, quote, in your brief on appeal, the associations cite three cases which they claim stand for the proposition that implied consent under these conditions gives rise to an implied obligation to pay. They cite the three Rhode Island Supreme Court decisions. The court then says this specifically as to the limited, discreet order and directive on remand. The matter is remanded for further proceedings consistent with this opinion regarding the issue, number one, of whether the implied consent in this circumstance gives rise to an obligation to pay the fair value for such use and occupancy, and, I'm editorializing here, number two, if so, in what amount. So that was the limited, discreet argument or issue that was presented on appeal for remand. When this matter was remanded back to the bankruptcy court, Judge Hoffman had read, obviously, this court's remand order, and he had also read those three decisions from the Rhode Island Supreme Court. He did so because they were the centerpiece of the remand. They were the reason that this court remanded this matter. At the very first hearing before Judge Hoffman, he pointed out that he had read those cases, and he delivered some bad news to the association's attorney, Mr. Crim. What he said is, quote, and I'm reading on page 19 of the transcript, which is document 724 in the bankruptcy court. Quote, it's important to dispose of the argument that as a matter of Rhode Island law, consent brings with it an implied obligation to pay. That's what the First Circuit describes as the argument the association is making. And they cite those three court cases. He refers to the very same three court cases that were cited by this court. And then he says, and I read those cases. In none of those cases stands for the proposition that there is an implied consent, an implied obligation to pay that follows as a matter of law. So the matter on remand went back to the bankruptcy court. The bankruptcy judge read this court's decision, read the three Rhode Island Supreme Court cases referred to, which induced this court to issue a remand here, and said the issue is dead on arrival. Those cases do not support your proposition. Are you arguing that the bankruptcy court then went beyond the scope of remand? Yes, Judge. Could you summarize that and then get into why you think the district court was wrong? Yes. There could have been, and arguably should have been, a hard stop at the point at which Judge Hoffman said, your cases don't support your legal proposition. But Judge Hoffman notes that when he gave the parties, particularly the associations, the opportunity to further brief this issue, they quote unquote refined their position. And what they insisted was that they had the opportunity or should have the opportunity to argue unjust enrichment. So Judge Hoffman said, and I'm guessing here he did so because he's a lower court judge. This matter had been appealed several times. He was probably trying to create as extensive a record as he could, so that if it went up on appeal again, as he probably understood it would, there would be a record for this court and other courts to look at. So what he said is, I will look at unjust enrichment. He did so, and he decided the matter primarily based on a burden of proof. He said, in short, the associations have not carried their burden of proving they conferred a benefit on Clanbakes, that's the bankruptcy debtor, under such circumstances that it would be unjust for Clanbakes to retain the benefit without paying the fair value thereof. Nineteen times, Your Honor, in his decision, Judge Hoffman refers to the burden of proof. This is reviewed on a clearly erroneous standard in which there are two permissible views of the evidence, then a fact finder's choice between them as a matter of law cannot be clearly erroneous. Clearly erroneous is a formidable standard. Under that, the court must be left with, quote, the definitive and firm conviction that a mistake has been committed. It goes on to say, in the Bronstein case, in Bible Speaks, this court's decisions, quote, an alternative reading of the record does not amount to a strong, unyielding belief that a mistake has been made. I understood the district court to both find that there was a clear error, but that's by the way because our review is de novo, but also to conclude that as a matter of law there had been some errors made, and that came from his reading of the Atlantic I and Atlantic II decisions. So could we get to that point? Yes, Judge. So what Judge Smith said on appeal, and the court's right, if you read the transcript of both the first and second matters or phases, and the matter was bifurcated before Judge Smith in the district court, he handled at the end interest, but before that he handled the main claim. If you read the transcripts, he is clearly expressing his consternation, his confusion, and frankly his frustration at what he was supposed to be doing here. And with respect, that tempered the way that he approached this matter and how he decided it. We're doing this de novo, so I think the question is just cut to the chase here. Is it correct to read the America decisions by the Rhode Island Supreme Court as basically dictating the result on the equitable determination made by the bankruptcy court, Judge? Well, it's appropriate to look at what the Rhode Island Supreme Court said in both America I and America II, and that's exactly what Judge Hoffman did. He said, okay, I'm supposed to look at circumstances in regard to my judgment. Well, excuse me, I don't think you're answering the question. What's, how, since it's de novo review, how should we read Atlantic I and Atlantic II? Do they preclude this sort of equitable analysis in the bankruptcy court on behalf of your client? No, they don't. And there's two compelling reasons. Actually, there's several. The first two are, number one, they never had this party before it. I.E.C. Klendake, the bankruptcy debtor, was not before the Rhode Island Supreme Court in America I or America II. Number two, the issue of trespass was not before the Rhode Island Supreme Court in America I or America II. And so what Judge Hoffman said is that under the unjust enrichment theory, I am supposed to look at certain circumstances. What were the circumstances that he looked at? He looked at the same circumstances that were looked at by the Rhode Island Supreme Court. That is a perfectly reasonable, sensible, defendable way of approaching this. And the Rhode Island Supreme Court has never said that you are limited or restricted in your review of circumstances in applying unjust enrichment. So there does seem to be one point where maybe the district court is correct, and that is the scope of the lease, whether it's merely a ground lease or it also includes the building. Are you saying that even if it was a mistake, it was immaterial? Or are you saying the bankruptcy court was free to reconsider that as well? Well, what Judge Hoffman said about the ground lease is that he's looking at it by analogy. These are unusual facts and circumstances. He was trying to look for some principled way of analyzing this. And he said, let's analyze it like a ground lease. He never said it was a ground lease. The other point is that both parties testified about a ground lease. So there's no error in regard to a ground lease. They had their expert testify as if it were a ground lease. Both parties were trying to analogize it to a ground lease. And so there was no error there. But the point is, and I'm running out of time, but I'll reserve it and touch on it with my two minutes, that the fundamental problem with the district court is that, if I could just finish this up, they had a cribbed view of what the circumstances are that one can look at in deciding unjust enrichment. And if you have that cribbed view, you wind up with, ultimately, what could be a perversion of an equitable concept, unjust enrichment, where you essentially wind up, if you don't step back and realize what you're doing. Okay, but the district court got that cribbed view from its reading of state law, the two decisions from the Rhode Island court. And so, like Judge Kayotta, I tend to think that that's the key issue in this case, whether that reading was correct or not correct. You have your two minutes. Thank you, Judge. Good morning, Your Honor. Excuse me. Good morning. William Grimm on behalf of the associations. This court was clear in 2013 as to what the remand issue was. And what you remained in was on the issue of implied contract theory of recovery here. And the court said, page two of its decision, that we affirm it's an issue of implied consent and the disallowance of the trespass claim, but nevertheless find it necessary to remand as to the issue of whether compensation is owed for plan-based authorized use in occupancy. And it went down back before the bankruptcy court on two theories of recovery, both of which involved implied contract in fact and implied contract in law, quasi-contract unjust enrichment. When it got back down to the bankruptcy court, certain facts were established because they had been affirmed by this court, the previous findings of the bankruptcy court trial. And those facts were as follows. One, some conduct of the associations had created an implied consent. Two, Clambakes had relied on that implied consent to occupy the premises. And three, Clambakes in fact occupied the premises pursuant to that implied consent and the reliance. That created an implied contract. Those facts itself. And the question on remand was not was there an implied contract, but the question on remand was what was the payment provision of that implied contract. Let's assume we disagree with you on that and we are over on the unjust enrichment aspect of the bankruptcy court ruling. You're saying as a matter of law from the First Circuit opinion, the bankruptcy court was required to find that there was the compensation that was due. No, Your Honor, I'm not saying that at all. No, you're not. Then I'm sorry I misunderstood you. No, what I'm saying was that there was an implied contract and the question before the bankruptcy court was, is that implied contract in fact one for free rent or is it one where fair value needs to be paid for use in occupancy? Well, you could have two versions of an implied recovery here. One is that there was an implied contract in fact. So that would be what we used to call an action at law. And the court found here there was no meaning in the mind setting any compensation to be paid. But you still had in your quiver another arrow, which is while there was an implied contract at law, quasi-contract, and you got the bankruptcy court to adjudicate that theory as well. Yes. The problem I have with your claim is that there the bankruptcy judge sitting in effect as the chancellor has very broad discretion to decide what's fair. I mean, it's really just asked, is it fair under these circumstances that they should be able to use this without paying a rent? And if not, how much of a rent is it fair for them to pay? And the bankruptcy judge sitting as the chancellor ultimately concluded, based on the overall record, it was not. You didn't persuade him that fairness required an implied rent. Don't we just review that for abuse of discretion unless we were to agree with Judge Smith that the holdings in America 1 and 2 dictated the result, which we weren't of the thought when we remanded it, and I'm not sure how I see it does dictate it. Well, you're right that the bankruptcy court needed to make findings of fact on the unjust enrichment claim as to the relative benefits of the use arising from the use. And I would say that the bankruptcy court made two mistakes in its unjust enrichment analysis, one of which Judge Smith pointed out, and the other which he did not. The first mistakes that the bankruptcy made in its analysis was to make clearly erroneous findings of fact, which it used in the benefit equation that it did. And this is where America 1 and 2 come in. The bankruptcy court found that the only benefit delivered by the associations to Clanbakes was a ground lease. That directly contradicts America 1 and 2, the renowned Supreme Court decisions, which hold, and are binding on Clanbakes as well as us, that the unit owners of these associations owned both the land and the building from the beginning. I understand the argument, but what difference does it make to the equitable analysis? One could understand this case as the Rhode Island Supreme Court found that even though the associations had not paid for the club, that they have legal title to the land and to the club, but they haven't paid for it. So now we have a new situation, which is Clanbakes in the bankruptcy court, to which an equitable analysis is being applied. And the bankruptcy court basically says, you associations have gotten enough of a benefit from this, and I don't think, as the Chancellor, you're entitled to anything more. I don't actually understand the Atlantic decisions to preclude such an analysis. What the bankruptcy court did below in this equitable analysis was to measure relative benefits as it perceived it. My point is that in measuring those benefits, it made a clearly erroneous factual finding that the only benefit that the associations gave to Clanbakes was a ground lease. That's wrong as a result of American I and II. The benefit that we gave to Clanbakes was seven years of use and occupancy of not only the land, but also the building that we owned as a result of the Rhode Island Supreme Court decision. We didn't get title to the property, the building and the land, as a result of Clanbakes' use of the premises. But they paid rent to IDC. It was one pocket paying rent to the other. Yes, Your Honor, they paid $150,000 a year to IDC properties, who they thought was the owner of the property. Now, you can't say one pocket paying to the other, because it's necessary for your claim to avoid merger and bar to treat them as separate entities. In other words, you're done with IDC, and the court said you couldn't get an accounting of IDC's profits, which would have been a form of rental payment. So now you've got this action against Clanbakes. So I'm not sure how you tell us we should ignore the corporate distinction. I'm not telling you that you should ignore it. Furthermore, the bankruptcy court goes on to find that some of that money goes into the construction of the building, for which your client has essentially received adequate compensation. That's another clear error, because the construction of the building was long completed before Clanbakes started paying rent to IDC properties. The other clear factual error that the bankruptcy court made in its equitable analysis was that it found that Clanbakes somehow gave its business to the associations. That's not accurate at all. In fact, the record is clear from the approved plan of reorganization that Clanbakes intended to continue its business, and in fact did continue its business, moving operations to other IDC properties, event locations in the city of Newport. So there were two fundamental factual errors that the judge used below in his equitable analysis. They took the risk in putting in the effort and work of establishing a very successful business at the location. Yes, for seven years they operated a successful business there. And your clients could have stopped it, or tried to stop it. They could have sought for an injunction, and they didn't. And so the courts have found you consented to that. That's over and done with. And then you win, and this spot is all yours, and lo and behold, you're conducting a very similar business at that same location with great success. You don't need to find there was a corporate transaction or transition to find that you benefited from the goodwill that they generated in that spot. People knew, you know, you're planning a wedding, and you say, oh, so-and-so's wedding five years ago is at this wonderful place out there. They might not even remember the name, so they call it a wonderful place out there. First of all, we're not operating any business at that location. We are merely landlords, and there's an independent operator who... Well, but you're getting the benefit of the rent. We are getting the benefit of the rent for the property that the Brown Supreme Court held that we owned. Right, but you can get much more. If I own a piece of land, and I've demonstrated that that land, the location, location, location, location, that that location is a perfect spot, and that building is a perfect spot for a very successful business, I can charge, or at least the bankruptcy judge could infer, I can charge a lot more for that land than I can charge for an unproven spot of land. Yes, location of certain real estate assets are important, but we obtain that location as a result of the Brown Supreme Court decision, not as a result of claim-based occupancy. But we're back to what's fair. Now, you've all of a sudden acquired this building and this business that you can charge out as a landlord, even though you didn't pay to develop it. Someone else paid for the building. Someone else paid to develop the business. You've got that, and the judge, the bankruptcy judge, who's pretty familiar with economic issues, is sitting there saying, is that fair, should they maybe get some more? And he says, no, that's enough. Yes, and in doing that analysis, he made these clear mistakes of fact, and a mistake of law, because you can't just look abstractly at benefits. Let me stay with that, because you've come back to that point, and I think it's a major one. You're saying, when he said ground lease, that was a factual mistake. You want us to find that that factual mistake was material, wasn't harmless, and therefore infected his ultimate conclusion. That wouldn't mean that we'd do what Judge Smith said. That would mean, at most, that we would demand for further fact-finding. Clearly, that factual finding is clearly erroneous, because it was the only side of the equation, the measurement, the benefit to claim-based. He misrepresented, or misfound, what the benefit to claim-based was. The benefit to claim-based was seven years of use and occupancy of land and a building. And he missed that point entirely. And there can't be any question about that fact. But how could that be, if they were paying rent? They weren't paying rent to the true owner. It doesn't make any difference if we're talking about, I mean, if I'm out money, I'm out money. If the Chancellor's measuring what I've gained and lost from the transaction, because it wants to compare it to what you've gained and lost, and decide on a fair adjustment between the two, it doesn't care who I paid the money to. I paid it out, so I incurred it as a cost. It affects your side of the ledger, because you didn't get it, but he didn't rule that you got it. And that's why I think the other side is arguing ground-leash, round-leash. It doesn't make any difference, because he certainly didn't find that you got the money. It makes all the difference, because what we gave to claim-based is the first part of the unjust enrichment analysis. You have to start there. What did we give to claim-based that you're measuring against? We gave them a building. You gave IDC a building. I'm sorry? You gave IDC a building. You gave IDC the land, right? No, we gave claim-based use of land and building for seven to eight years. That's the side of the benefit equation that we gave. That's the side of the benefit equation that the judge misconstrued when he said it was only a ground-lease that we gave. Okay, so now we're back into equitable territory, and that we cannot reverse unless we find an abuse of discretion. Why do you think there was an abuse of discretion? We've heard your arguments that there were errors of fact, but is there anything else? Yes, because the bankruptcy court went beyond the relationship to decide the equities. It pulled a relationship we had with Longwood, our tenant. That didn't arise from claim-based use. The benefit to us has to arise from claim-based use and occupancy over the seven, eight years that it operated. That's the measurement of the other side of the equation that needs to be made, not something in the abstract, like let's say I was a wealthy landowner in Newport. It would have to be if you were in Newport. Perhaps, Your Honor. It would be error for the judge to consider my wealth in the equitable analysis and say, oh, it's okay that they don't pay rent because that person is so rich. The equitable analysis has to be limited to the relationship. What arises out of the use and occupancy of the property? What did I give, and what did they give to us as a result of the use and occupancy? And the answer to that is they gave us nothing. And so the error of the law here was going beyond the scope of the use and occupancy in determining the equity. Is there evidence in the record on what the value of that land is in that area undeveloped and that it's no greater than the value that you now have to you? Because I think that's what you're arguing is that they didn't enhance the value of the land, so hence you haven't been able to benefit as a landlord by charging more because a successful business can be conducted on it. They didn't enhance the land in the building. We own both the land and the building from the beginning. Well, you're saying that. No, the Supreme Court said that. No, it's not whether you own it. It's whether they enhanced the value. What evidence in the record would you point to as carrying the burden of proof  that there is no evidence in the record whatsoever that they enhanced the value of the building? Well, let me suggest to you that it seems kind of a reasonable assumption that conducting a very successful business at a location for a year may well enhance the value. You have the burden of proof. What evidence is there contrary to that? For example, you could have a real estate appraiser who says this is now worth $1 million. It was worth $1 million eight years ago before this business started running, so there's been no enhancement. I didn't see anything like that. There was no evidence of a differential value in the record, either pro or against. So we're back to our burden issue. No, Your Honor. It's back to an evaluation of the evidence. In order for the judge to decide there was a benefit given to us by 10 megs, there has to be evidence of that benefit in the record.  There is not. Thank you, counsel. Thank you very much. The Rhode Island Supreme Court in Fondanelli said this about unjust enrichment. The inquiry is whether under the circumstances, and it does not define what the circumstances are, under the circumstances would it be inequitable for the defendant to retain the benefit without paying the value of that benefit. The circumstances are left to the sound discretion of the court. In this case, the bankruptcy court. There's been no abuse of that discretion here. What the bankruptcy court said is, let's look at the same circumstances that the Rhode Island Supreme Court looked at. Because it's out of that same Rhode Island Supreme Court case, those two rulings, those two decisions from the Rhode Island Supreme Court, that the trespass claim has arisen. So it's perfectly sensible and reasonable to look at those facts and circumstances. That's exactly what Judge Hoffman did. Now, what the associations are saying is that in more certain facts and circumstances, turn a blind eye to them. Nowhere has the Rhode Island Supreme Court ever said that. They cite one case. In fact, it's their best case because it's their only case. J.P. Morgan Chase v. Lee, L-E-I-G-H. This is a decision from the magistrate judge in Rhode Island, Judge Ahman. It's an admiralty case that deals with a maritime lien. The reason there was no unjust enrichment there was because the bank in that question, J.P. Morgan Chase, had a maritime lien. The fundamental problem with their analysis here is that they believe there has to be an A-B relationship. A has to give something to B, B has to give something to A. That may be true in set-off, it may be true in recoupment, but unjust enrichment is a far more expansive concept, and it says, look at all of the equities. Exactly what Judge Hoffman did, we ask that his decision be affirmed. Thank you, Judge. I'm tempted to ask whether there's any chance this case can be settled, but I think it's a futile question. Thank you. That's it. Safe trip back to Rhode Island. Good job. Microphones are on. Hang on.